

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

APR 0 9 2013

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

TENNYSON HARRIS, *Pro Se*          *

Petitioner                         *
                                   *
v.                                 *          Civil No. PJM-11-470
                                   *          Crim. No. PJM-00-253
UNITED STATES OF AMERICA           *
                                   *
Respondent                         *
                                   *

### MEMORANDUM OPINION

Tennyson Winston Harris, *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Paper No. 342]. Having considered the Motion and the Government's Opposition thereto, the Court **DENIES** the Motion.

I.

On May 17, 2000, Harris was charged with conspiracy to distribute and to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846. He was alleged to be managing a trucking company that used tractor trailers to transport thousands of pounds of marijuana from West Coast America to the East Coast. A bench warrant was issued for him, but he remained at large for several months. On September 19, 2000, Harris was arrested in Florida and was charged in the Middle District of Florida with a separate and unrelated cocaine trafficking conspiracy charge. Because of the Florida proceedings, Harris did not have his initial appearance in the District of Maryland until February 12, 2002.

On March 29, 2002, the Court entered a scheduling order granting a continuance of the trial from May 21, 2002, to August 13, 2002, pursuant to 18 U.S.C. § 3161(h)(7)(A) of the

Speedy Trial Act. In the order, the Court explained that "the case is both unusual and complex" because it contains "multiple defendants and . . . involves extensive discovery, including hundreds of pages of transcripts . . . and physical evidence seized from several different parts of the country." Paper No. 82. Because of this complexity and the unreasonableness of expecting the Government to be adequately prepared within the time limits established by the Speedy Trial Act, the Court concluded that the "ends of justice" required a continuance. *Id.*

On August 13, 2002, Harris's jury trial began. Several witnesses were called and linked Harris to the transport of marijuana. Evidentiary issues arose over the credibility of certain witnesses, particularly Eric Carlos Price. After finishing Price's direct examination, the Government disclosed to the Court and defense counsel three inconsistent statements that Price had given in his testimony. First, Price had previously stated that he saw two guns in Harris's possession whereas at trial he mentioned only one. Second, Price had talked about a fight between Harris and another man being resolved through a payment in cocaine whereas at trial Price had no recollection of such fight. Third, Price said at trial that he had moved half a million dollars and a thousand pounds of marijuana for Harris whereas previously he claimed he moved over a million dollars and over a ton of marijuana for Harris. Trial Tr. 791-92. Despite having this information in hand, Harris's counsel did not impeach Price on these inconsistencies. Instead, Harris's counsel chose to cross examine Price on other issues, including calling an impeachment witness, Reginald Exum, to contradict several of Price's statements.

Another issue arose over the recorded phone call of Timothy Jenkins that was entered into evidence and played for the jury. In the recording, Jenkins, a former coconspirator turned informant, discussed with a coconspirator other than Harris the amount of marijuana seized from Jenkins's truck and how that amount of marijuana was different from the amount Harris had

ordered Jenkins to deliver to the coconspirator. Because this was a recording and because the Government did not call him, Jenkins was not present for Harris's counsel to cross-examine. This Court advised Harris's counsel that he could call Jenkins and impeach him, but Harris's counsel never called Jenkins either. Harris's counsel apparently believed Jenkins to be a tainted and unreliable witness. Trial Tr. 1461-62, 1794-96. Instead of calling Jenkins, during his closing argument, Harris's counsel chose to emphasize that, although Jenkins seemed to be a central figure in the Government's case, the Government failed to call him. *See* Trial Tr. 1923.

When the evidence closed, the jury was instructed that it could attribute to Harris four categories of drugs: (1) drugs Harris personally distributed or possessed with intent to distribute; (2) drugs Harris attempted to or planned to distribute or possess with intent to distribute; (3) drugs which another member of the conspiracy distributed or possessed with intent to distribute so long as it was reasonably foreseeable to Harris that such a quantity of drugs would be involved in the conspiracy; and (4) drugs which another member of the conspiracy attempted to or planned to distribute or possess with intent to distribute so long as it was reasonably foreseeable to Harris that such quantity of drugs would be involved in the conspiracy. *See* Trial Tr. 1875-86. The jury was further instructed to determine whether that amount was more than 1,000 kilograms, between 100 and 1,000 kilograms, between 50 and 100 kilograms, or less than 50 kilograms of marijuana. *See* Trial Tr. 1875. On August 29, 2002, the jury found Harris guilty on the conspiracy charge and found that the offense involved 1,000 kilograms or more of marijuana.

Harris was sentenced to 360 months imprisonment, with 120 months to run concurrently with the Middle District of Florida's sentence for unrelated cocaine charges, followed by 10 years supervised release.

Harris filed a timely appeal to the Fourth Circuit, arguing two issues related to improper jury instructions, neither of which was related to a calculation of the amount of drugs attributable to Harris. The appeal was dismissed. Harris then filed a writ of certiorari in the Supreme Court of the United States, which, on January 24, 2005, granted the petition and remanded the case to the Fourth Circuit for further consideration in light of *United States v. Booker*, 543 U.S. 220 (2005). Prior to *Booker*, the federal sentencing guidelines had required courts to impose mandatory sentencing enhancements based on facts found by a preponderance of the evidence during the sentencing stage. *Booker*, 543 U.S. at 233-34. *Booker* held that this was a violation of the Sixth Amendment and remedied that violation by making the guidelines advisory. *Id.* at 244-65. However, the Fourth Circuit affirmed Harris's conviction, remanding only for resentencing because several formerly mandatory sentencing enhancements had been imposed during Harris's original sentencing.

At the resentencing hearing, this Court found by a preponderance of the evidence that Harris was responsible for at least 7,192 pounds of marijuana, that he possessed a dangerous weapon during the conspiracy, and that he was an organizer or leader of a criminal activity. This Court chose to impose those advisory enhancements upon Harris, resulting in an adjusted offense level under the Sentencing Guidelines. Because of a prior conviction, which placed him at a Criminal History Category of IV, Harris had an advisory custody range of 360 months to life imprisonment with a mandatory minimum of 20 years. On August 14, 2006, the Court once again sentenced Harris to 360 months imprisonment, with 120 months to run concurrently with the Middle District of Florida conviction, followed by 10 years supervised release. Harris once again appealed to the Fourth Circuit. He argued that this Court had erred in determining the amount of marijuana for which he was responsible, which adversely affected his advisory

Sentencing Guideline range.  The Fourth Circuit affirmed the sentence and stated that this Court's sentencing methodology was proper.

On February 22, 2011, Harris filed the present Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

## II.

In his Motion, Harris sets forth five separate bases to vacate his conviction:  (1) a Speedy Trial Act violation; (2) a Confrontation Clause violation; (3) a sentence in excess of the statutory maximum; (4) erroneous jury instructions; and (5) ineffective assistance of counsel for failing to impeach witnesses. The Government disputes all five bases.  In Harris's Reply, he concedes that because "erroneous jury instructions" was argued on direct appeal, it cannot be argued on collateral review.  Paper No. 355 at 10.  The remaining four issues will be discussed in turn.

## III.

### A.

Harris's argument that his trial commenced in violation of the Speedy Trial Act and thus violated his Sixth Amendment right to a speedy trial is without merit.  The delay between his original indictment and arrest was due to Harris being at large and is excludable under 18 U.S.C. § 3161(h)(3)(A).  *See* § 3161(h)(3)(A) (disallowing any period of time resulting from the absence or unavailability of the defendant).  The delay between Harris's arrest in Florida and his initial appearance in this Court was due to Harris having to stand trial in Florida and is excludable under § 3161(h)(1)(B).  *See* § 3161(h)(1)(B) (excluding any delay resulting from trial with respect to other charges against the defendant); *United States v. Shear*, 825 F.2d 783, 786 (4th Cir. 1987) (holding the phrase "delay resulting from trial with respect to other charges" to include delays resulting from trials being carried on in other jurisdictions).  The delay between

Harris's initial appearance in this Court and the beginning of his trial was due to a continuance granted by this Court pursuant to § 3161(h)(7)(A).  *See* § 3161(h)(7)(A) (excluding any period of time resulting from a grant of continuance made by a judge to better serve the "ends of justice"). Because allowing time for the Government to properly prepare for the case outweighed the interests of the public and Harris in a speedy trial, the "ends of justice" required that a continuance be granted.  *See id.*  There was no Speedy Trial Act violation.

### B.

Harris's Confrontation Clause argument was not raised on direct appeal and thus is procedurally barred on collateral review.  *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-51 (2006).  To overcome a procedural bar, Harris must identify the "cause" of the procedural bar and show that he suffered "actual prejudice" as a result.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998).  Alternatively, Harris would have to prove "actual innocence."  *See id.* at 623. Because Harris does not plead actual innocence, only "cause" and "actual prejudice" will be discussed below.

### 1.

Harris asserts that ineffective assistance of counsel was the "cause" behind appellate counsel's failure to raise the Confrontation Clause issue and that "actual prejudice" resulted from that failure.  The Court disagrees.

Courts give appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal."  *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000).  When counsel makes a strategic decision to raise one issue over another to avoid diverting focus from the stronger claims, he has not been ineffective.  *See id.* at 164.  When assessing the wisdom of counsel's decision to raise a particular appellate claim over others, "only when ignored issues are

clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Appellate counsel's decision to not raise a Confrontation Clause issue on appeal did not amount to inadequate performance. Jenkins was fully available to the defense, and the Court made it clear that Harris's counsel could call him. Because Jenkins was available to Harris during the trial and because the Fourth Circuit has held that recorded conversations between an informant and a coconspirator concerning acts done in furtherance of a conspiracy are not testimonial in nature, *see United States v. Barraza*, 365 F. App'x 526, 530 (4th Cir. 2010), any Confrontation Clause issue raised on appeal would have been easily dismissed.[1] Thus, appellate counsel's decision to not raise a Confrontation Clause issue on appeal does not establish the necessary "cause" or "actual prejudice" needed to overcome a procedural bar.

### C.

Harris next argues that his sentence is in excess of the statutory maximum because the jury was improperly instructed as to the amount of drugs that it might attribute to him. As a result, the quantity of drugs the jury found placed Harris in a much harsher subsection of 21 U.S.C. § 841 than he says he actually violated. When determining the statutory maximums and mandatory minimums of § 841, a jury follows the principles set forth in *Pinkerton v. United States*, 328 U.S. 640 (1946) to determine the quantity of narcotics attributable to a coconspirator. *See United States v. Foster*, 507 F.3d 233, 250-51 (4th Cir. 2007). Those principles require that

---

[1] Harris spends a good deal of time in his Reply discussing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) and how it should be controlling in this case. *Melendez-Diaz* deals with the fact that the Confrontation Clause entitles a defendant to confront all witnesses offering testimonial hearsay statements against the defendant, including all witnesses submitting affidavits. *Id.* at 309-11. Harris's case is materially different from *Melendez-Diaz* because the recorded phone call from Jenkins played into evidence was not a testimonial statement covered by the Confrontation Clause. *See United States v. Barraza*, 365 F. App'x 526, 530 (4th Cir. 2010) (citing *Crawford v. Washington*, 541 U.S. 36, 56 (2004)) (stating that the Confrontation Clause only covers testimonial hearsay statements and that tape-recorded statements made in furtherance of a conspiracy are, by their nature, not testimonial).

for acts to be attributable to a coconspirator, the coconspirator must have reasonably foreseen the acts as a necessary or natural consequence of the unlawful agreement. *See Foster*, 507 F.3d at 250 n.10.

Harris argues that the trial court failed to instruct the jury to only determine the amount of marijuana directly attributable to him as opposed to the conspiracy as a whole. *See* Paper No. 342 at 8. Harris is correct that a jury can only convict someone in a conspiracy based upon the amount of narcotics "attributed to" that person, but he misunderstands the scope of the phrase "attributed to," which includes all narcotics "reasonably foreseeable" by the coconspirator or "within the scope of [the coconspirator's] agreement." *See United States v. Irvin*, 2 F.3d 72, 78 (4th Cir. 1993). Because the jury instructions never attributed to Harris more than the amount of marijuana he could have reasonably foreseen as being part of the conspiracy, the jury was properly instructed in determining the threshold amount attributable to him. *See* Trial Tr. 1875-86. Since, under § 841(b)(1)(A)(vii) a defendant with a prior felony drug conviction faces a mandatory minimum of 20 years and a statutory maximum of life for an offense involving 1,000 kilograms or more of marijuana, Harris's sentence of 360 months does not exceed the statutory maximum. *See* § 841(b)(1)(A)(vii).

### D.

Harris's argument that counsel rendered ineffective assistance fails to satisfy the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). To prove ineffective assistance of counsel under *Strickland*, the defendant must demonstrate that his defense counsel was inadequate *and* that actual prejudice resulted from that inadequacy. *Strickland*, 466 U.S. at 687. Adequate performance by counsel is measured according to "reasonableness under prevailing professional norms," and there is a strong presumption that counsel's conduct falls within that reasonable

standard.  *Id.* at 688.  Furthermore, the prejudice resulting from counsel's inadequate performance must create a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Harris argues that, because the Government's entire case against him was based upon cooperating witness testimony, counsel provided ineffective assistance by not impeaching any witnesses.  Paper No. 342 at 12.  But Harris fails to name with any particularity any witnesses who should have been impeached or provide any reason why impeachment should have been undertaken, other than broadly stating that "witness testimony was inconsistent with prior statements."  Paper No. 355 at 11.  In the Government's Response, the Government cites the example of one witness, Price, who gave inconsistent statements yet was not impeached.  Paper No. 352 at 25.  The only difference between Price's testimony at trial and his earlier statements was that his trial testimony provided less incriminating, but still very much incriminating, evidence against Harris. *See* Trial Tr. 791-92.  Harris's counsel reasonably could have decided it wise not to impeach Price on his earlier statements because impeaching Price might have heightened clearly damaging information against Harris.  Harris's counsel opted for what he deemed a more cautious approach:  to impeach Price's testimony by calling an impeachment witness, Reginald Exum, to contradict Price's earlier statements.  Tactics such as these constitute "reasonableness under prevailing professional norms" and do not amount to inadequate performance under *Strickland. See* 466 U.S. at 688.

Additionally, Harris argues that  by not calling Jenkins, counsel provided ineffective assistance.  But again, Harris's counsel could have reasonably thought that there was more to gain by arguing during closing that the Government never called Jenkins rather than by actually calling him.  Counsel could have plausibly decided that Jenkins was a tainted, unreliable witness

in several respects, hence too risky to call.  But even assuming *arguendo* that counsel's failure to call Jenkins constituted inadequate performance, no prejudice resulted from that decision.  The other testimony offered as to Harris's guilt, i.e. that of Carlos Price, Ronald Evans, Barbara Jenkins, Chris Harris, Clifton Blake, and Courtney Taylor, was overwhelming.  There was and is no reasonable probability that, but for counsel's failure to call Jenkins, the proceedings would have resulted in a different outcome.  *See Strickland*, 466 U.S. at 694.   Harris's claim for ineffective assistance of counsel is denied.

## V.

For the foregoing reasons, Harris's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Paper No. 342] is **DENIED.**

## VI.

Rule 11(a) of the Rules Governing § 2255 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).

The Court has considered the record and finds that Harris has not made the requisite showing.  His claims are wholly without merit and fail to satisfy the pertinent "reasonable jurists" standard.  Accordingly, the Court **DENIES** a certificate of appealability.

A separate Order will **ISSUE.**

_____
/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**April 8, 2013**