IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. **PJM 00-253** |
| | * | |
| **TENNYSON HARRIS,** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Tennyson Harris is serving a 324-month prison term after being convicted of Conspiracy to Distribute and Possess with Intent to Distribute More Than 1,000 Kilograms of Marijuana, in violation of 21 U.S.C.A. § 846 (West). For a second time, he seeks compassionate release by having his sentence reduced to time-served, under 18 U.S.C. § 3582(c)(1)(A),[1] which would be approximately 253 months. He claims that there are two extraordinary and compelling circumstances justifying his release: (1) the likelihood that he would receive a lower sentence today, and (2) the disparity between his sentence and those of his Co-Defendants. For the following reasons, Harris' motion is **DENIED WITHOUT PREJUDICE**.

### I. BACKGROUND

Harris' sentence stems from his serious drug trafficking-related conduct. Briefly summarized, in the 1990s, he was part of a conspiracy to transport marijuana from the West Coast to the East Coast. Harris managed a trucking company that he used in this endeavor. His single-count superseding indictment for Conspiracy to Distribute and Possess with Intent to Distribute More Than 1000 Kilograms of Marijuana covered conduct occurring from at least the summer of

---

[1] Harris initially filed his motion for compassionate release *pro se*. ECF No. 244. It has since been supplemented with assistance of supervised counsel from the University of Maryland Law School Criminal Defense Clinic. ECF Nos. 248, 252, 256.

1

1997 through October of 1999 in the State and District of Maryland, Southern District of California, the Central District of California, the Northern District of Texas, the Southern District of New York, the Middle District of North Carolina and elsewhere. Multiple Co-Defendants were also indicted.

Beginning on August 13, 2002, Harris was tried before a jury over the course of twelve days and found guilty of the conspiracy charge. The jury also found that the offense involved 1,000 kilograms or more of marijuana. ECF No. 243.

At sentencing, the Court calculated Harris' offense level as being at level 40. This was based on the Pre-Sentence Report's recommended base offense level of 34, with a 2-level enhancement for possession of a dangerous weapon during the conspiracy, and a 4-level enhancement for Harris' leadership role in the conspiracy. Because of a prior conviction, Harris' Criminal History Score was set at category IV. Accordingly, his sentencing range at the time was 360 months to life imprisonment with a mandatory minimum of 20 years. On March 17, 2003, Harris was sentenced to 360 months imprisonment, with 120 months to run concurrently with a sentence for unrelated cocaine charges in the Middle District of Florida. He was also sentenced to 10 years of supervised release. ECF 217.

On appeal, the Fourth Circuit affirmed the conviction but remanded the case for resentencing in light of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), which held that the mandatory imposition of sentencing enhancements based on facts found by a preponderance of the evidence during sentencing was unconstitutional. At resentencing, based on its independent judgment, the Court found by a preponderance of the evidence that Harris was responsible for at least 7,192 pounds of marijuana; that he possessed a dangerous weapon during the conspiracy; and that he was an organizer or leader of the conspiracy. The Court imposed

the advisory guidelines enhancements upon Harris, resulting in a guidelines range, again, of 360 months to life imprisonment with a 20-year mandatory minimum. The Court once again sentenced Harris to 360 months imprisonment, with 120 months to run concurrently with the Middle District of Florida conviction, followed by 10 years of supervised release. Harris again appealed, and this time the Fourth Circuit affirmed the sentence.

On October 25, 2016, the Court revisited Harris' sentence again, following his Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2), based on revisions to the sentencing guidelines which would result in a sentencing range of 324 months to 360 months imprisonment, rather than 360 months to life considered at Harris' resentencing. This Court granted the motion and reduced Harris' sentence to 324 months' imprisonment. ECF No. 377. His projected release date is March 30, 2032.[2]

Harris' Co-Defendants, all of whom received lower sentences than he, are no longer in custody. For instance, Co-Defendant David Beckford, who was also convicted of Conspiracy to Distribute and Possess with Intent to Distribute Marijuana, was sentenced to 170 months imprisonment and 5 years of supervised release. ECF No. 209. The Co-Defendant who received the next-longest sentence compared to Harris was Gerome Gordon, who was convicted of the same crime and sentenced to 188 months of imprisonment and 5 years of supervised release. ECF No. 287.

On June 7, 2021, Harris, *pro se*, petitioned this Court for compassionate release and a reduction in sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 388. Student

---

[2] Over the years, Harris has also filed motions to vacate his sentence under 28 U.S.C.A. § 2255 (West), which have been denied, and a prior *pro se*, Motion for Compassionate Release based on a risk of COVID-19 infection. In February 2021, the Court denied relief in an AO 248 after finding that Harris neither demonstrated extraordinary and compelling circumstances nor satisfied the § 3553 factors.

3

counsel with The University of Maryland Criminal Defense Clinic, supervised by a member of the bar of this Court, filed a supplemental motion on November 8, 2021. On December 8, 2021, the Government responded, and on January 20, 2022, Harris replied. The matter is now before the Court for disposition.

## II.   DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." *See* 18 U.S.C. § 3582(c); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). An exception to this rule is the First Step Act, 18 U.S.C. § 3582(c)(1)(A), which allows the court to act on a motion for compassionate release filed by a prisoner. *See United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020). To grant relief, two conditions must be met: (1) the movant must present extraordinary and compelling circumstances; and (2) relief must be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a).[3] *See* 18 U.S.C. § 3582(c)(1)(A)(i). If a reduction is merited, this Court must also find that the petitioner would not pose "a danger to the safety of any other person or to the community," U.S.S.G. 1B1.13(2).

### A. Extraordinary and Compelling Circumstances

In reviewing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), "courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d

---

[3] As a threshold issue, a petitioner must have fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). The Government argues that Harris has not exhausted his administration remedies because his initial petition to the BOP did not state the same bases for relief he now raises, specifically, that he likely would not receive § 851 sentencing enhancements today and that his sentence is disproportionate compared to his Co-Defendants.

Harris, however, indicates that he has, through student counsel, filed a supplemental request to the warden, and a copy of this request submitted to the Court demonstrates that it clearly raises the bases for release argued here. This request was submitted on December 15, 2021, and by the time Harris filed his reply brief on January 20, 2022, the warden had not responded within 30 days. The Court, therefore, is satisfied that Harris has effectively exhausted his administrative remedies.

228, 230 (2d Cir. 2020)). The Court need not defer to the Sentencing Commission's policy statements regarding what constitutes "extraordinary and compelling reasons," rather, the Court has independent discretion to determine if these criteria are met. *See Wise v. United States*, No. CR ELH-18-72, 2020 WL 2614816, at *6 (D. Md. May 22, 2020).

Harris asserts that there are extraordinary and compelling circumstances justifying his release based on his view that he would likely receive a drastically lower sentence were he to be sentenced today, as well as the disparity between his sentence and those of his Co-Defendants. The Court disagrees as to both arguments.

### 1. Asserted Likelihood of a Lower Sentence Today

Harris argues that his sentence is inconsistent with today's sentencing practices in that the Government likely would not pursue 21 U.S.C. § 851 enhancements. Without these enhancements, he says, his applicable guidelines range, based on an offense level of 34 and a criminal history score of IV, would be 188 to 235 months imprisonment. Harris also argues that he likely would benefit from a downward variance today, which he says are applied in 46% of marijuana trafficking cases. By his math, Harris believes he would likely receive a sentence of 174 months today, compared to the 253 months he has already served.

The Government argues that it is by no means clear that Harris would be unlikely to receive the § 851 enhancements, which are still statutorily available since Harris' case aligns squarely with the criteria set forth by the Attorney General as to when to make such motions. *See* Memorandum from Attorney General Eric Holder on Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancement in Certain Drug Cases (Aug. 12, 2013) (prosecutors should decline to seek a § 851 enhancement unless the defendant is involved in conduct that makes the case appropriate for severe sanctions; in making this determination, prosecutors should consider

5

whether the defendant (1) was a leader or organizer within a criminal organization; (2) was involved in the use or threat of violence in connection with the offense; (3) has a criminal history that includes any prior history of violent conduct or recent prior convictions for serious offenses; (4) has significant ties to large-scale drug trafficking organizations, gangs, or cartels; (5) would receive a gross sentencing disparity with equally or more culpable co-defendants; and (6) other case-specific aggravating or mitigation factors). Application of the enhancements should still apply, for example, where a defendant has multiple drug convictions or prior violent offenses. *Id.* Accordingly, the Government contends that it is mere speculation that Harris would not receive the § 851 enhancements and, given Harris' weapon possession and major role in the conspiracy, it is unlikely that the Government would seek or that he would receive a downward variance.

Harris invites the Court's attention to *United States v. Sappleton*, No. CR PJM-01-284, 2021 WL 598232 (D. Md. Feb. 16, 2021), in which this Court granted compassionate release where a defendant was a minor player who had been incarcerated for a period longer than the conspiracy leader. He also cites *Sappleton* for the proposition that "section 851 enhancements have generally become so disfavored that in 2016 they were applied in only five cases in this district – although more than half of drug-trafficking cases were eligible – making it highly unlikely that the enhancement would be applied at all if [the defendant] were tried today." *Id.* at 7.

The difficulty with Harris' argument, however, is that he relies on the premise that he likely *would* not receive the enhancements today; he does not and cannot argue that these enhancements are unavailable today. Thus, his case is distinguishable from the cases in which courts have found that the fact that a defendant could not, in light of changes to the law, receive the same enhancements if resentenced, and for that reason have found the extraordinary and compelling requirement was met. *See, e.g., Babb v. United States*, No. CR ELH-04-190, 2021 WL 231549*11-

13 (D. Md. June 4, 2021) (finding extraordinary and compelling circumstances where only one of defendant's prior offenses would qualify as predicate offense under § 851 today, and defendant would accordingly face a mandatory minimum of 15 years imprisonment rather than life imprisonment). Even *Sappleton*, which Harris cites, makes this distinction. There this Court reasoned that the sentence the defendant would receive currently was much lower than the sentence he received in 2002, 1) because of the clear likelihood he would not receive the same § 851 enhancements (both because one of his predicate offenses that made him a career offender <u>no longer qualified</u>, and because of the rarity of such enhancements being applied) and 2) because of the reduced sentencing guidelines at the given offense level and criminal history score. *Id.* at 3.

The difference between whether a defendant possibly *might* not receive enhancements, as opposed to *could* not receive said enhancements, remains critical. Quite simply, the possibility that a lesser sentence might be imposed currently does not, in the Court's view, constitute an extraordinary and compelling reason for release.

Still, Harris argues that, were he to be sentenced today, he likely would benefit from a downward variance because marijuana crimes are less severely viewed in society today. The Court is not persuaded. Even if some marijuana crimes are viewed less severely these days, Harris' argument overlooks the fact that he was found responsible for over <u>7,000</u> pounds of marijuana himself, a far cry from the street level dealing that may be subject to less severe sanctions nowadays. Moreover, Harris' argument that he likely would receive a downward variance is belied by the fact that this very Court, which would be the one asked to grant the variance, has now considered Harris' sentence three times – at his original sentence; at his *Booker* resentencing; and on his motion to reduce his sentence pursuant to the guidelines changes – and on all three occasions the Court has not found a reason to vary his sentence below the guidelines.

In sum, Harris has not demonstrated that the Government would not seek § 851 enhancements or that he would likely receive a downward variance today; in short, he has not demonstrated extraordinary and compelling reasons for his release.

### 2. Sentencing Disparity

A sentencing disparity may, in limited circumstances, also constitute an extraordinary and compelling reason to reduce a sentence and grant compassionate release. *See McCoy*, 981 F.3d at 285–286 (upholding reduction of sentences to time served where defendants would have received 30 years-lower sentences currently due to statutory changes); *United States v. Payton*, No. CR PJM 06-341, 2021 WL 927631, at *2–3 (D. Md. Mar. 11, 2021) (granting reduction where Defendant's more culpable co-defendant had benefitted from three changes in sentencing regime and been released); *United States v. Edwards*, No. CR PJM 05-179, 2021 WL 1575276, at *2–3 (D. Md. Apr. 22, 2021) (same).

Harris argues that his sentence is inconsistent with the sentences of his Co-Defendants, Gordon, Durrant Cripps, Keeble Malcolm, and Beckford, who he contends were "equally or more culpable," and all of whom have been released from prison already. He points to Gordon, in particular, who also received a weapons and role enhancement prior to his *Booker* resentencing. The Government responds that any disparity that exists is justified by the different roles of the defendants.

The Court believes that the disparity between Harris' sentence and those of his Co-Defendants remains warranted. It is true that Gordon, like Harris, received role and weapons enhancements and was sentenced to only 188 months imprisonment. But Gordon's criminal history was at level I, compared to Harris' level IV. Though Harris asserts that the conduct of his Co-Defendants was just as grave as his, he does not supply support beyond his mere say-so. He does

not show, for instance, that a more culpable Co-Defendant received a similar or lesser sentence. This case, therefore, contrasts, for instance, with *Sappleton, supra,* and *United States v. Eccleston*, No. CR PJM-11-567, 2021 WL 5506754 (D. Md. Nov. 24, 2021). In *Sappleton*, in addition to changes in the sentencing guidelines and enhancement scheme, this Court noted that Sappleton had committed a serious but non-violent crime; had received cocaine but was never involved in the negotiating process; and had served far longer in custody than the conspiracy leader. Harris, on the other hand, has past convictions for drug-related and other crimes and held a leadership role in a multi-state drug conspiracy during which he possessed a weapon. His sentencing guidelines reflected this conduct, as compared with the guidelines for his Co-Defendants, some of whom did not receive the role or weapons enhancements he did, or had less extensive criminal histories, or benefitted from early acceptance of responsibility. The disparities between Harris and his Co-Defendants, therefore, are not unwarranted. *See, e.g., United States v. Morales-Vega*, 08-cr-51 (D. Md. Oct. 19, 2021) (denying compassionate release for lack of extraordinary and compelling circumstances including disparity between defendant and co-defendants' sentence where difference was warranted by defendant's lack of early acceptance of responsibility and weapons and leadership enhancements).

The Court finds that Harris has not met his burden of demonstrating extraordinary and compelling circumstances.

### B. The 18 U.S.C. § 3553(a) Factors

Even where a defendant has demonstrated extraordinary and compelling reasons justifying modification of his sentence, the court must assess whether the sentencing factors under 18 U.S.C. § 3553(a) militate in favor of early release. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

9

(2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a).

The Government argues that, even if Harris were to have shown extraordinary and compelling reasons for release, the sentencing factors do not weigh in favor of release. It points to the Court's decision with respect to Harris'. prior motion for compassionate release based on Covid-19 risk. On an AO form, the Court denied Harris' prior motion and cited, as one reason, that the sentencing factors weighed against release, without further explanation. The Government argues that Harris remains a danger to the community based on his serious drug offenses, and that his current sentence is necessary to properly punish his crimes.

Harris' risk to the community, to be sure, seems to have diminished. While incarcerated, he has no record of violent infractions, a persuasive reflection of his reduced potential danger to the community if released, more so no doubt than a now nearly 30-year-old criminal history. *See, e.g., Eccleston*, 2021 WL 5506754 at *6 (noting that present conduct more indicative than over ten-year-old conduct). Indeed, Harris' record, as the Government concedes, is commendable. He has availed himself of some 85 programs with the BOP and has worked for 18 years of his incarceration. He has shared with the Court a dozen letters of support. It would by no means be unreasonable to conclude that Harris is rehabilitated.

However, as noted by other courts, a "defendant's rehabilitation alone proves insufficient to warrant a sentence reduction." *See Morales-Vega,* 2021 WL 4864450 at *6, quoting *United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021). Indeed, to remind: The Court does not even reach the question of whether early release of Harris

would comport with the sentencing factors. The fact remains that he has not met the threshold requirement of demonstrating extraordinary and compelling reasons justifying his release on compassionate grounds.

### III. CONCLUSION

For the foregoing reasons, Harris' Motion for Compassionate Release, ECF Nos. 388, 393, is **DENIED WITHOUT PREJUDICE**. The Court further finds Harris' Motion to Appoint Counsel, ECF No. 390, **MOOT**, in light of his representation by, initially, the Federal Public Defenders Office and now the University of Maryland Criminal Defense Clinic.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

May 11, 2022